ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JUL -7 PM 12: 38

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| NGUYEN KIEU MINH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 306-061 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, a federal inmate currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, brought the captioned petition under 28 U.S.C. § 2241. Petitioner, a deportable alien, argues that the Bureau of Prisons ("Bureau") has subjected him to more severe conditions of confinement than those faced by United States citizens by housing him at McRae, which according to Petitioner is a facility reserved for prisoners who are likely to be deported. Pet., p. 5. Petitioner states that, because of his status as a deportable alien, he is ineligible for a variety of prison programs, including work programs, educational opportunities, and drug abuse treatment programs, as well as transfer to a halfway house. Id. at 19-24. Petitioner also argues that his alienage prevents him from receiving consideration for early release. Id. at 23.

According to Petitioner, these collateral consequences of his alienage were not taken into account at his sentencing, and he is entitled to a sentence reduction. Id. at 30. Also of note, Petitioner concedes that he did not exhaust administrative remedies, but offers the conclusory arguments that he did not have to exhaust administrative remedies because: 1) he is incarcerated at a privately-operated facility; and 2) resort to administrative remedy would

have been "futile." Id. at 9. For the reasons herein, the Court **REPORTS** and **RECOMMENDS** that the petition be **DISMISSED**.

## I. DISCUSSION

In prior cases, this Court has soundly rejected Petitioner's arguments. See Bennett v. United States, CV 306-043, doc. no. 3 (S.D. Ga. June 22, 2006); Delemos v. Pugh, CV 305-069, doc. no. 10, *adopted by*, doc. no. 12 (S.D. Ga. Apr. 12, 2006). As explained herein, the instant petition is subject to at least three threshold problems. Furthermore, notwithstanding these problems, the petition also fails on the merits.

First, Petitioner's admitted failure to exhaust administrative remedies strips the Court of jurisdiction to hear his petition. See, e.g., Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Of note, Petitioner's notion that his incarceration at a private facility gives him a general dispensation from the exhaustion requirement has been roundly rejected by this Court. See, e.g., Diaz v. Pugh, CV 306-005, doc. no. 2, *adopted by* doc. no. 5 (S.D. Ga. Apr. 20, 2006). Neither does Petitioner's conclusory allegation that resort to administrative remedy would have been futile excuse him from the exhaustion requirement.

Because the exhaustion requirement in § 2241 cases is jurisdictional, "whether [Petitioner] may even assert a futility exception to the requirement is questionable." Jaimes v. United States, No. 05-14514, 168 Fed. Appx. 356, 359, 2006 WL 387440, at *2 (11th Cir. Feb. 21, 2006). Indeed, the Eleventh Circuit has held unequivocally, that "[i]f, and only if, the [petitioner] has pursued his administrative remedy may he seek relief in the district court." United States v. Herrera, 931 F.2d 761, 764 (11th Cir. 1991). Regardless, those courts which apply a futility exception do so in only "extraordinary circumstances," and require the petitioner to "bear[] the burden of demonstrating the futility of administrative review." Fuller

2

v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Petitioner has not shown the existence of extraordinary circumstances; nor has he provided any reason to conclude that administrative remedies are "patently futile." Id. Thus, it is doubtful that the Court may entertain Petitioner's claims.[1,2]

Second, despite Petitioner's attempt to cast his petition as challenging the "execution" of his sentence, see Pet., p. 7, § 2241 is the wrong procedural vehicle for most--if not all--of his claims. Petitioner's chief argument is that, if the sentencing court had been aware of the collateral consequences of his alienage, it would have given him a shorter sentence. Id. at 5-7. As relief, Petitioner seeks a sentence "adjustment." Id. at 8; see also id. at 28-30. In essence, Petitioner argues that he is entitled to be resentenced and granted a downward departure based upon his alien status. See id. at 25-26.

Simply put, Petitioner is challenging the fundamental validity of his sentence, not its execution. Such claims are properly brought in a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. 28 U.S.C. § 2255, ¶ 1. Section 2255 motions must be filed in the court of conviction. Id. Petitioner was convicted and sentenced in the District

---

[1] Assuming *arguendo* that the instant petition may be construed liberally as a civil rights complaint, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*) (*pro se* pleadings should be construed liberally), Petitioner's failure to exhaust administrative remedies would still be fatal to his claims. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Because exhaustion of administrative remedies is a "precondition" to filing a civil rights complaint in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000)(*per curiam*). The Supreme Court has held that § 1997e(a) applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1231, 1325-26 (11th Cir. 1998). Finally, it cannot be doubted that the § 1997e(a) applies to prisoners at McRae. See Pri-Har v. Corr. Corp. of Am., No. 05-11132, 154 Fed. Appx. 886, 887-88 (11th Cir. Nov. 15, 2005)(*per curiam*). Thus, even if the Court were to construe the petition as a civil rights complaint, it would still be subject to dismissal.

[2] Perhaps noteworthy, other courts have applied the exhaustion requirement in similar cases. See Hernandez-Escarsega v. Fleming, CV 404-0271, 2004 WL 2002418, at *2 (N.D. Tex. Sept. 8, 2004); Hernandez v. Lindeman, No. CIV-00-1165, 2002 WL 31163074, at *3 (D. Minn. Sept. 24, 2002).

3

of Maine. United States v. Kieu Minh Nguyen, CR 299-058 (D. Me. July 11, 2000); see also Pet., p. 6. Thus, this Court lacks jurisdiction to grant Petitioner the relief he requests.[3] See, e.g., Ojo v. I.N.S., 106 F.3d 680, 683 (5th Cir. 1997)(only court of conviction may exercise jurisdiction over claims properly brought under § 2255); see also Broussard v. Lippman, 643

---

[3] At any rate, any § 2255 claim is both untimely and successive. Petitioner has previously filed a § 2255 motion, which the court of conviction denied on October 22, 2002--more than three years ago. United States v. Nguyen, CR 299-058, doc. no. 52 (D. Me. Oct. 22, 2002). Section 2255 motions are subject to a one-year statute of limitations. 28 U.S.C. § 2255, ¶ 6. Furthermore, a federal prisoner may not file a second or successive § 2255 motion without permission from "the appropriate court of appeals." Id., ¶ 8; see also 28 U.S.C. § 2244(b).

Of course, a federal prisoner may resort to § 2241 upon a showing that "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255, ¶ 5. However, "the mere fact that relief under § 2255 is procedurally barred is not alone sufficient to make § 2241 an available remedy." Bridges v. Vasquez, 151 F. Supp.2d 1353, 1360 (N.D. Fla. 2001). Petitioner has made no attempt to argue that he is entitled to invoke the so-called "savings clause" of § 2255; nor does any reason to suppose that Petitioner is entitled to proceed under § 2241 leap out of his petition. See Darby v. Hawk-Sawyer, 405 F.3d 942, 944-45 (11th Cir. 2005) (*per curiam*) (discussing applicability of § 2255's "savings clause").

Regardless, the merits of Petitioner's argument for sentence "adjustment" based upon the collateral consequences of his alienage are dubious. Petitioner contends that his ineligibility for various prerelease programs or sentence reduction entitles him to a downward departure. Although a defendant's alienage might form the basis for a downward departure in an extraordinary case, neither an alien's ineligibility for prison programs nor his deportability are in themselves sufficient grounds for downward departure. See United States v. Macedo, 406 F.3d 778, 794 (7th Cir. 2005); United States v. Maung, 320 F.3d 1305, 1308 (11th Cir. 2003); United States v. Lopez-Salas, 266 F.3d 842, 846-51 (8th Cir. 2001); United States v. Charry Cubillos, 91 F.3d 1342, 1345 (9th Cir. 1996) (although court may consider alienage, "ineligibility for community placement" insufficient basis for downward departure); United States v. Mendoza-Lopez, 7 F.3d 1483, 1487 (10th Cir. 1993), *impliedly overruled on other grounds by*, United States v. Fagan, 162 F.3d 1280 (10th Cir. 1998); United States v. Nnanna, 7 F.3d 420, 422 (5th Cir. 1993); United States v. Restrepo, 999 F.2d 640, 644-47 (2d Cir. 1993).

Furthermore, because Petitioner apparently did not raise his claims at sentencing or on appeal, he must couch them in terms of the ineffective assistance of counsel. In other words, to prevail Petitioner must show: 1) his attorney unreasonably failed to argue for a downward departure based upon Petitioner's alienage; and 2) there is a reasonable probability that, but for his counsel's performance, he would have been granted a downward departure. See United States v. Torre-Ortega, No. 04-36039, 143 Fed. Appx. 49, 50, 2005 WL 1842870, at *1 (9th Cir. Aug. 4, 2005)(citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). Petitioner has not shown that his counsel's actions were unreasonable. Cf. United States v. Sera, 267 F.3d 872, 874-75 (8th Cir. 2001)(counsel's failure to move for downward departure based on alienage not unreasonable). Moreover, a district court's decision to downwardly depart is wholly discretionary. See, e.g., United States v. Anderson, 326 F.3d 1319, 1333 (11th Cir. 2003)(refusal to grant a motion for downward departure unreviewable unless court erroneously believed it lacked the authority to grant the departure). Thus, Petitioner cannot show a reasonable probability that, but for his counsel's performance, he would have received a lesser sentence.

Accordingly, because Petitioner's claims regarding the validity of his sentence lack merit and are procedurally barred, the Court declines to recommend transferring this action to the court of conviction. Cf. 28 U.S.C. § 1631.

4

F.2d 1131, 1134 (5th Cir. Unit A), *cert. denied*, 452 U.S. 920 (1981).[4]

Third, to the extent Petitioner is contesting the conditions of his confinement, such claims are not properly brought under § 2241. The petition for habeas corpus is available to challenge the fact or duration of one's confinement, not the conditions of confinement. Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Stated another way, "the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979) (*per curiam*).

Here, Petitioner disputes the Bureau's use of a detainer from the Bureau of Customs and Immigration Enforcement ("BICE") in determining his eligibility for prison programs or early release. See Pet., p. 22. Claims of this sort are normally brought in a civil rights action, not a petition for writ of habeas corpus. See, e.g., Stevens v. Heard, 674 F.3d 320, 323 (5th Cir. 1982) (state prisoner's complaint challenging "the practice of considering any detainers in determining eligibility for prison programs" properly brought under 42 U.S.C. § 1983). That said, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, No. 04-2307, 162 Fed. Appx. 813, 815, 2006 WL 52792, at *2 (10th Cir. Jan. 11, 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241 without assessing whether claim was exhausted).

Regardless, assuming *arguendo* that the Court may exercise jurisdiction over the petition, Petitioner's arguments fail because he has not shown the violation of any constitutional right. First of all, Petitioner has no due process liberty interest in early release. See, e.g., Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998). More generally, inmates

---

[4] In Bonner v. Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*).

do not have any federal constitutional right to participate in rehabilitative programs.[5] Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. See, e.g., McKune v. Lile 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Meachum v. Fano, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); but see Wilkinson v. Austin, 545 U.S. 209, __, 125 S. Ct. 2384, 2395 (2005)(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison under the Fourteenth Amendment).[6] In sum, Petitioner has not shown that his Fifth Amendment due process rights have been violated.

Furthermore, the Bureau's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. Of note, courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison

---

[5]See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); Murdoch v. Washington, 193 F.3d 510, 513 (7th Cir. 1999) (no protectible liberty or property interest in attending rehabilitation program); Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992)(no right to educational or vocational opportunities); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to particular inmate classification or eligibility for rehabilitative programs); Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980) (same); Battle v. Anderson, 564 F.2d 388, 403 (10th Cir. 1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); Lyle v. Sivley, 805 F. Supp. 755, 759-60 (D. Ariz. 1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

[6]The Supreme Court's recent decision in Wilkinson is not instructive in the instant case. In Wilkinson, the Supreme Court held that Ohio prisoners had a Fourteenth Amendment liberty interest in avoiding assignment to a special "supermax" prison--the only one of its kind in Ohio--in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at __, 125 S. Ct. at 2389. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. Id. Petitioner has not shown that assignment to McRae poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in Wilkinson. Id. at 2394 (quoting Sandin v. Conner, 515 U.S. 474, 483-84 (1995)).

programs.[7] The Court also notes that Petitioner's argument that aliens are categorically denied transfers to halfway houses is misleading. As the Ninth Circuit has pointed out, the Bureau excludes *all* inmates--not just aliens--who are subject to detainers from participation in community-based treatment programs. McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not single out aliens and does not violate the Equal Protection Clause. Id.

Next, Petitioner's argument that aliens are categorically denied participation in drug abuse treatment programs is also misleading. The Bureau does not deny aliens participation in substance abuse treatment programs; rather, the Bureau denies aliens subject to BICE detainers consideration for early release on account of their completion of a residential drug abuse treatment program. See 28 C.F.R. § 550.58(a)(1)(i). Of note, the Bureau clearly possesses the power to categorically exclude inmates from consideration for early release. See Lopez v. Davis, 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. See Mathews v. Diaz, 426 U.S. 67, 77 (1976).

That said, Petitioner's ineligibility for sentence reduction is actually a consequence of the "detainer exclusion" explained above. The Bureau does not allow inmates who are

---

[7]See, e.g., Franklin v. Berry, 909 F. Supp. 21, 27-28 (D.D.C. 1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); Limas v. McNary, 799 F. Supp. 1259, 1263 (D. Mass. 1992)(Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); Isaraphanich v. Coughlin, 715 F. Supp. 119, 120-21 (S.D.N.Y. 1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); Fernandez-Collado v. I.N.S., 644 F. Supp. 741, 744 (D. Conn. 1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), aff'd 857 F.2d 1461 (2d Cir 1987).

ineligible for community-based treatment to receive consideration for early release--irrespective of whether they complete a substance abuse treatment program. 28 C.F.R. § 550.58(a)(1)(v). As noted above, all inmates with detainers--not just deportable aliens--fall into this category. The Bureau's decision to link consideration for early release with eligibility for community-based treatment is rational and has been upheld by every court to consider the issue. See, e.g., Rublee v. Fleming, 160 F.3d 213, 215-18 (5th Cir. 1998).

Finally, Petitioner is quite correct that his deportability prevents him from participating in Federal Prison Industries ("UNICOR") work assignments. See 28 C.F.R. § 345.35(a). Nevertheless, the Bureau clearly has a rational basis for excluding deportable aliens from consideration for rehabilitative programs, including UNICOR assignments. As one court has explained:

> The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning. . . . There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported. Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.

Ruiz-Loera v. United States, No. 00-CV-323-K, 2000 WL 33710839, at *2 (D. Utah June 23, 2000)(citations omitted); see also Tamayo, 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

In sum, Petitioner's claims should be dismissed for lack of jurisdiction, or, in the alternative, for lack of merit.

## II.    CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the instant petition be **DISMISSED**.

SO REPORTED and RECOMMENDED this 7th day of July, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE